# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# OCALA DIVISION

MARIE L. HENRY, as guardian,
parent, next of kin, and for and on behalf
of M.E. HENRY-ROBINSON, a minor,

      Plaintiff,

v.                                      Case No: 5:13-cv-528-Oc-30PRL

CITY OF MT. DORA, et al.,

      Defendants.

_____/

# ORDER

THIS CAUSE comes before the Court upon Defendants Brett Livingston and Ivelisse Severance's *Renewed* Motion to Dismiss Counts II through V and Count VII of Plaintiff's Complaint (Doc. 26), and Plaintiff's response in opposition thereto (Doc. 27). The Court, having reviewed the applicable pleadings, and being otherwise fully advised in the premises, concludes that the motion to dismiss should be granted in part and denied in part.

## BACKGROUND

### I.  Factual Background

On October 31, 2009, the Mt. Dora Police Department received an emergency call complaining that several juveniles were throwing rocks at a building in the downtown area. Officer Brett Livingston and Officer Ivelisse Severance (collectively, the "Officers")

responded to the area, and Officer Livingston observed a group of juveniles, including minor M.E., walking downtown.[1]  Officer Livingston stopped M.E. and the other juveniles to question them about the alleged incident.  M.E. responded that she did not participate in the incident and had no knowledge of it.  Officer Livingston then asked M.E. for her name and address, which Plaintiff contends was for the purpose of collecting information for a database.  M.E. refused to provide this information to Officer Livingston.  Plaintiff alleges that Officer Livingston then grabbed M.E., threw her to the ground, and arrested her for resisting an officer without violence in violation of § 843.02, Florida Statutes (2009).  M.E.'s top was pulled down during the arrest exposing her breasts, and when M.E. asked Officer Severance to fix it, she refused.[2]

Thereafter, on May 21, 2010, the state court issued an order of adjudication and disposition in M.E.'s juvenile delinquency case withholding adjudication of delinquency on the charge of obstructing an officer without violence.  (Doc. 34, Ex. B).[3]  The state court found that M.E. committed the offense of resisting an officer without violence and

---

[1]Plaintiff contends that M.E. was "nowhere near the building," but the complaint does not describe M.E.'s proximity to the area in question.  (Doc. 1 at 3).

[2]In considering a motion to dismiss, a court must accept the factual allegations of the complaint as true and evaluate all inferences derived from those facts in the light most favorable to the plaintiff.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  Accordingly, these facts were gleaned from Plaintiff's complaint (Doc. 1) and do not constitute findings of fact.

[3]In considering a motion to dismiss, the Court may take judicial notice of public records without converting the motion to dismiss into a motion for summary judgment.  *Universal Express, Inc. v. U.S. SEC*, 177 Fed. App'x 52, 53 (11th Cir. 2006) (per curiam) (citing *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278 (11th Cir. 1999); *Stahl v. U.S. Dep't of Agric.*, 327 F.3d 697, 700 (8th Cir 2003)).  At this stage of the proceedings, the Court will take judicial notice of the Order of Adjudication and Disposition issued by the state court in M.E.'s juvenile proceedings (Doc. 34, Ex. B), but it will not take judicial notice of the facts as alleged in the arrest records (Doc. 34, Ex. A).

sentenced her to one-year probation, which required that M.E. complete and comply with various conditions.  (*Id.*).

## II. Procedural History

On October 25, 2013, Plaintiff Marie L. Henry initiated this action on behalf of her minor daughter, M.E., arising from M.E.'s arrest on October 31, 2009.  (Doc. 1).  Plaintiff alleges various claims against the City of Mt. Dora (the "City") and the Officers in their individual and official capacities, including claims under 28 U.S.C. § 1983 for (1) deprivation of civil rights under the Fourth and Fourteenth Amendments against the City (Count I); and (2) deprivation of civil rights under the Fourth, Fifth, and Fourteenth Amendments against the Officers (Counts II & III).  Plaintiff also raises state law claims for (1) false arrest and false imprisonment against the Officers and the City (Counts IV-VI); (2) assault and battery against Officer Livingston and the City (Counts VII & VIII); and (3) negligent training and supervision against the City (Count IX).  As relief, Plaintiff seeks compensatory damages, punitive damages, where applicable, costs, and attorney's fees.

The City filed an answer to the complaint on December 10, 2013, (Doc. 8) and filed an amended answer on December 17, 2013 (Doc. 11).  The Officers filed a motion to dismiss Counts II through V and Count VII of Plaintiff's complaint on December 27, 2013. (Doc. 13).  Plaintiff then filed a motion seeking to strike the motion to dismiss because the motion attached confidential records from M.E.'s juvenile proceedings that were not properly redacted.  (Doc. 19).  The Court granted the motion to strike, permitting the Officers an opportunity to renew their motion to dismiss and to either attach appropriately redacted confidential records or to file the records under seal.  (Doc. 24).  The Officers

filed their renewed motion to dismiss on April 28, 2014, and filed M.E.'s confidential records under seal.  (Docs. 26, 34).

Currently before the Court is the Officers' renewed motion to dismiss.  (Doc. 26). By their motion, the Officers contend that (1) Counts II through V should be dismissed to the extent that those counts allege claims for false arrest because the claims are barred by the principles established in *Heck v. Humphrey*, 512 U.S. 477 (1994); (2) Counts IV and V for false arrest/false imprisonment under state law should be dismissed because Plaintiff's claims for false arrest are barred under Florida law; [4] (3) Counts II and III should be dismissed to the extent those counts allege claims for false arrest under § 1983 because the Officers are entitled to qualified immunity; (4) Counts II through V should be dismissed to the extent those counts allege claims against the Officers in their official capacities because those claims are duplicative of the claims alleged against the City; and (5) Count VII should be dismissed to the extent it alleges a claim for assault because it fails to state a claim upon which relief could be granted.

## **STANDARD**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed for failure to state a claim upon which relief can be granted.  In considering a motion to dismiss under Rule 12(b)(6), a court must accept the factual allegations of the complaint as true and evaluate all inferences derived from those facts in the light most favorable to

---

[4]The Officers conflate their argument for dismissal of Plaintiff's state law claims for false arrest and false imprisonment with their argument for dismissal of Plaintiff's § 1983 claims for false arrest.  However, the Court concludes that it is more appropriate to address the § 1983 claims and state law claims separately.

the plaintiff. *See Erickson*, 551 U.S. at 94. Conclusory allegations, unwarranted factual deductions, or legal conclusions masquerading as facts, however, are not entitled to the assumption of truth. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

## ANALYSIS

### I.  Whether Plaintiff's claims for false arrest are barred by *Heck v. Humphrey*.

First, Defendants contend that Plaintiff's claims for false arrest under § 1983 and Florida law (Counts II-V) are barred by the *Heck* doctrine as espoused in *Heck v. Humphrey*, 512 U.S. 477.[5]  In *Heck*, an Indiana state prisoner who was serving a fifteen-year sentence for voluntary manslaughter filed a § 1983 action against county prosecutors and a state police investigator alleging that his manslaughter conviction violated his constitutional rights. *Id.* The district court dismissed the prisoner's action because the issues it raised "implicated the legality of his confinement," and the Seventh Circuit affirmed. *Id.* at 479. The Supreme Court affirmed dismissal of the prisoner's § 1983 claims and held that his claims were barred because

> to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a

---

[5]To the extent Counts II and III raise claims for excessive force under § 1983, the Officers do not argue that such claims would be barred by *Heck*. (Doc. 26). Accordingly, the Court does not address whether Plaintiff's claims for excessive force under § 1983 would be *Heck* barred.

> § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, then the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.  But if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff the action should be allowed to proceed, in the absence of some other bar to the suit.

*Id.* at 486-87.  In reaching this conclusion, the Court stated "[w]e think the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments applies to § 1983 damages actions that necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement, just as it has always applied to actions for malicious prosecution."  *Id.* at 486.  *Heck*'s holding can be distilled into three main inquiries: (1) whether there is an underlying conviction or sentence; (2) whether a judgment in favor of the plaintiff would necessarily imply the invalidity of the conviction or sentence; and (3) whether the underlying conviction or sentence has been invalidated or otherwise favorably terminated.

## 1. Underlying Conviction or Sentence

Plaintiff asserts that the Officers' contention that *Heck* applies to Plaintiff's claims for false arrest fails on the first inquiry because the order of adjudication withholding adjudication of delinquency does not constitute a "conviction" for purposes of *Heck*.  The Court disagrees.

Plaintiff is correct in asserting that pursuant to applicable Florida law, an adjudication of delinquency, or in M.E.'s case a withholding of adjudication of

delinquency,[6] is not considered a "conviction" and is also not considered a finding of "guilt" as those concepts are understood in the criminal law context. *See* § 985.35(6), Fla. Stat. ("[A]n adjudication of delinquency by a court with respect to any child who has committed a delinquent act or violation of law shall not be deemed a conviction; nor shall the child be deemed to have been found guilty or to be a criminal by reason of that adjudication."). Rather, if a state court in Florida finds that a juvenile committed a delinquent act or violation of the law, the court is empowered to either withhold adjudication of delinquency or enter an adjudication of delinquency. § 985.35(4)-(5). Both options, however, indicate that the state court found that the juvenile committed a delinquent act or violation of the law. *See Menuto*, 912 So. 2d at 607.

Although an issue of first impression in this circuit, a majority of courts that have directly considered whether the *Heck* doctrine applies to juvenile delinquency adjudications have concluded that *Heck* applies, such that it could bar a juvenile's claims under § 1983 if the remaining elements of the *Heck* doctrine are met.[7] *See Morris v. City*

---

[6]Nevertheless, because the difference between the two are irrelevant for the purposes of this discussion, to alleviate verbosity, the Court will refer to M.E.'s order of adjudication withholding adjudication of delinquency as the "juvenile adjudication." *See Florida v. Menuto*, 912 So. 2d 603, 607 (Fla. 2d DCA 2005) (explaining that the difference between withholding adjudication of delinquency and an adjudication of delinquency is the power it confers upon the court to impose a more restrictive disposition).

[7]Plaintiff argues that citation to these authorities is unpersuasive because Florida's juvenile justice system is solely predicated upon Florida statutes; thus, Plaintiff contends that reliance on case law discussing the laws of other states is improper. (Doc. 27 at 7-8). But Florida's juvenile justice system, while a product of Florida statutory law, is not unique in purpose or application from the juvenile justice systems of other states. To the extent the juvenile justice systems of other states are similar to the juvenile justice system of Florida, these cases remain persuasive authority. For example, Arizona law similarly provides that a juvenile adjudication "shall not be deemed a conviction of crime," A.R.S. § 8-207(A), yet the District Court for the District of Arizona found

*of Detroit*, 211 Fed. App'x 409, 411 (6th Cir. 2006); *Grande v. Keansburg Borough*, No. 12-1968(JAP), 2013 WL 2933794, at *6 (D. N.J. June 13, 2013); *Dominguez*, 2011 WL 4543901, at *2-3;[8] *but see Johnson v. Bd. of Sch. Comm'rs of the City of Ind.*, No. 1:09-cv-574-WTL-TAB, 2010 WL 3927753, at *3 (S.D. Ind. Oct. 1, 2010) (finding that *Heck* did not apply to a juvenile adjudication of delinquency because under Indiana law a juvenile adjudication did not amount to a conviction).

Moreover, application of *Heck* to juvenile adjudications preserves an underlying purpose of the *Heck* doctrine—to avoid potentially conflicting resolutions arising out of the same set of facts.  *See Heck*, 512 U.S. at 486 (comparing a claim challenging the lawfulness of a conviction or sentence under § 1983 to a common-law claim for malicious prosecution and recognizing "a strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transaction" (internal citation and quotation marks omitted)); *see also McClish v. Nugent*, 483 F.3d 1231, 1250 (11th Cir. 2007) (noting that the *Heck* doctrine "is designed . . . to avoid the problem inherent in two potentially conflicting resolutions arising out of the same set of events by foreclosing collateral attacks on convictions through the vehicle of a § 1983 suit"); *Abella v. Rubino*, 63 F.3d 1063, 1065 (11th Cir. 1995) (noting that the purpose of the *Heck* doctrine was "to limit the

----

that the *Heck* doctrine applied to juvenile adjudications.  *See Dominguez v. Shaw*, No. CV 10-01173-PHX-FJM, 2011 WL 4543901, at *2-3 (D. Ariz. Sept. 30, 2011)

[8]Several other courts have applied the *Heck* bar to § 1983 claims related to juvenile adjudications without directly addressing whether the *Heck* bar is applicable to juvenile adjudications.  *See Adkins v. Johnson*, 482 Fed. App'x 318, 319-20 (6th Cir. 2012); *Fenwick v. United States*, 926 F. Supp. 2d 201, 220-21 (D.C. 2013); *Knight v. Thomas*, No. 1:06-CV-95-TS, 2008 WL 1957905, at *8-10 (N.D. Ind. May 2, 2008); *Michaels v. City of Vermillion*, 539 F. Supp. 2d 975, 991 (N.D. Ohio 2008).

opportunities for collateral attack on state court convictions because such collateral attacks undermine the finality of criminal proceedings and may create conflicting resolutions of issues"). Here, even though adjudication of delinquency was withheld, the state court found that M.E. violated § 843.02, Fla. Stat., and imposed sanctions. (Doc. 34, Ex. B). If this Court concludes that Plaintiff's § 1983 claims for false arrest would necessarily imply the invalidity of M.E.'s juvenile adjudication, then a judgment in favor of Plaintiff on the false arrest claims would conflict with the findings of the state court.[9] By applying *Heck* to M.E.'s juvenile adjudication, the Court would avoid the potential outcome of conflicting resolutions.

Also, application of the *Heck* doctrine to juvenile adjudications would not undermine the rehabilitative nature of the juvenile justice system in Florida.[10] It does not indicate that a juvenile is considered a criminal or guilty for purposes of criminal law and is not a punitive measure. Rather, application of the *Heck* doctrine is a procedural mechanism that circumscribes the civil actions a juvenile can initiate under § 1983 to redress alleged constitutional wrongs committed by state actors related to a juvenile adjudication.

---

[9]Plaintiff contends that *Heck* is inapplicable to her because the sole purpose of *Heck* was to prevent prisoners from using § 1983 as a means of circumventing the requirements for habeas relief. (Doc. 27 at 10). Plaintiff is correct in her assertion that *Heck* addressed the "intersection of . . . § 1983[] and the federal habeas corpus statute, 28 U.S.C. § 2254." *Heck*, 512 U.S. at 480. Yet, Plaintiff fails to recognize that while *Heck* intended to address that very issue, the holding in *Heck* also took into account the goal of "avoid[ing] parallel litigation over the issues of probable cause and guilt." *Id.* at 484 (internal citations and quotation marks omitted).

[10]"[T]he ultimate aim of juvenile proceedings is to rehabilitate." *Menuto*, 912 So. 2d at 607 (citing *P.W.G. v. Florida*, 702 So. 2d 488, 491 (Fla. 1997); § 985.02, Fla. Stat. (2002)).

Accordingly, for the foregoing reasons, the Court concludes that the *Heck* doctrine applies to juvenile adjudications, such that for the purposes of the *Heck* bar, an adjudication of delinquency (or withholding adjudication of delinquency) is the functional equivalent of a "conviction" or sentence.  Thus, the first inquiry of the *Heck* analysis is satisfied.

**2.  Invalidity of the Conviction or Sentence**

Next, the Court must consider whether a judgment in favor of Plaintiff would necessarily imply the invalidity of M.E.'s juvenile adjudication.   In making this determination, "the court must look both to the claims raised under § 1983 and to the specific offenses for which the § 1983 claimant was convicted."  *Hughes v. Lott*, 350 F.3d 1157, 1161 n.2 (11th Cir. 2003).

The state court found that M.E. committed the act of resisting an officer without violence in violation of § 843.02, Fla. Stat., which provides, "Whoever shall resist, obstruct, or oppose any officer . . . in the execution of legal process or in the *lawful execution of any legal duty*, without offering or doing violence to the person of the officer, shall be guilty of a misdemeanor of the first degree."  (Emphasis added.).  To prove that M.E. committed the offense of resisting an officer without violence, the state was required to show that (1) the Officers were engaged in the lawful execution of a legal duty; and (2) the actions of M.E. obstructed, resisted, or opposed the Officers in the performance of that duty.  *See V.L. v. State*, 790 So. 2d 1140, 1142 (Fla. 5th DCA 2001).

Here, Plaintiff alleges claims for false arrest arguing that the Officers originally lacked reasonable suspicion to detain M.E. and, later, lacked probable cause to arrest her. (Doc. 1).  "An arrest without a warrant and lacking probable cause violates the Constitution

10

and can underpin a § 1983 [false arrest] claim, but the existence of probable cause at the time of arrest is an absolute bar to a subsequent constitutional challenge to the arrest." *Brown v. City of Huntsville*, 608 F.3d 724, 734 (11th Cir. 2010); *see also Marx v. Gumbinner*, 905 F.2d 1503, 1505-06 (11th Cir. 1990). Thus, Plaintiff's claims for false arrest will turn upon whether reasonable suspicion existed to detain M.E. and probable cause existed to arrest M.E.

However, a finding that the Officers lacked reasonable suspicion to detain M.E. or probable cause to arrest her would necessarily imply the invalidity of the juvenile adjudication. *See Quinlan v. City of Pensacola*, 449 Fed. App'x 867, 870 (11th Cir. 2011). If the Officers lacked reasonable suspicion to detain M.E. and probable cause to arrest her, then her juvenile adjudication for violating § 843.02, Fla. Stat., would be impugned because such a finding would negate the element that the Officers were engaged in the *lawful* execution of a legal duty. Accordingly, success on Plaintiff's claims for false arrest would necessarily imply the invalidity of her juvenile adjudication such that the second inquiry of the *Heck* analysis has been satisfied.

## 3. Favorable Termination

As to the third inquiry, no evidence has been presented, and Plaintiff does not contend, that M.E.'s juvenile adjudication has been reversed on direct appeal, expunged, declared invalid by a state tribunal authorized to make such determination, or called into question by a writ of habeas corpus. Accordingly, Plaintiff cannot satisfy the favorable-termination requirement that would preclude application of the *Heck* bar.

11

**4. Availability of Habeas Relief**

Finally, the Court recognizes that the *Heck* analysis may entail a fourth inquiry—whether the plaintiff had access to habeas relief.  Relying on *Heck*'s progeny, Plaintiff contends that her false-arrest claims are not *Heck* barred because M.E. does not have access to federal habeas relief.  (Doc. 27 at 13).[11]  In his concurring opinion in *Heck*, Justice Souter noted his concern that the opinion of the Court could be interpreted as risking the rights of individuals who do not have access to federal habeas relief, such as those who were only fined or who completed short terms of imprisonment, because those individuals would be barred from vindicating their federal civil rights in a federal forum through the only avenue that would be available to them—§ 1983.  *Heck*, 512 U.S. at 500 (Souter, J., concurring).  Justice Souter concluded that such a denial would be impermissible because it would "run counter to '§ 1983's history' and defeat the statute's 'purpose.'"  *Id.* at 501.  In response to Justice Souter's concern, Justice Scalia stated, "[w]e think the principle barring collateral attacks [on criminal convictions]—a longstanding and deeply rooted feature of both the common law and our own jurisprudence—is not rendered inapplicable by the fortuity that a convicted criminal is no longer incarcerated."  *Heck*, 512 U.S. at 490 n.10.

Subsequently, in *Spencer v. Kemna*, 523 U.S. 1 (1998), the Supreme Court addressed whether a habeas petition filed by an inmate no longer in custody presented a

---

[11]Although Plaintiff cites this proposition, she does not explain in what way M.E. is precluded from seeking federal habeas relief.  Neither party specifically addressed whether M.E. could pursue federal habeas relief.  Nevertheless, for the purposes of this discussion, the Court assumes that M.E. does not have access to federal habeas relief.

case or controversy under Article III, § 2 of the Constitution.  The petitioner wished to challenge his parole revocation and filed a petition for a writ of habeas corpus, but his sentence expired before the district court could consider the petition on the merits.  *Id.* at 5-6.  The district court dismissed his petition as moot.  *Id.*  The petitioner appealed, arguing, in part, that because *Heck* "would foreclose him from pursuing a damages action under [§ 1983] unless he can establish the invalidity of his parole revocation, his action to establish the invalidity [of his parole revocation] cannot be moot."  *Id.* at 17.  The Court stated that "[t]his [argument] is a great non sequitur, unless one believes (as we do not) that a § 1983 action for damages must always and everywhere be available."  *Id.*  However, a majority of the Justices (four concurring and one dissenting) agreed that "a former prisoner, no longer 'in custody,' may bring a § 1983 action establishing the unconstitutionality of a conviction or confinement without being bound to satisfy a favorable-termination requirement that it would be impossible as a matter of law for him to satisfy."  *Spencer*, 523 U.S. at 21 (Souter, J., concurring).

Based on the tension created by Justice Souter's concurring opinion in *Heck* and the "plurality" of *Spencer*, a circuit split has developed regarding the application of *Heck* to individuals who file claims under § 1983 and who do not have access to habeas relief, such as those who are no longer in custody due to the expiration of their sentences.  On one hand, four circuits have declined to follow the concurring and dissenting opinions of *Spencer*, and have found that *Heck* applies to all § 1983 claimants regardless of whether

the claimant has access to federal habeas relief.[12]  But at least six circuits have found that

the *Spencer* plurality permits a claimant to pursue relief under § 1983 when the claimant

cannot pursue federal habeas relief.[13]

Eleventh Circuit precedent is not entirely clear on this issue.  The Eleventh Circuit

first addressed the *Spencer* plurality in *Harden v. Pataki*, 320 F.3d 1289, 1298 (11th Cir.

2003), in considering the applicability of the *Heck* bar to an individual challenging

unconstitutional extradition procedures under § 1983.  *Id.*  The Eleventh Circuit concluded

that the plaintiff's § 1983 claims were not barred by *Heck*.  In reaching this conclusion, the

court first found that *Heck* did not apply to the plaintiff's § 1983 claims challenging the

procedural defects of his extradition because the challenge would not impugn the plaintiff's

conviction or sentence.  *Id.* at 1296-98.  Second, the court stated that "because federal

habeas corpus is not available to a person extradited in violation of his or her federally

protected rights, even where the extradition itself was illegal, § 1983 must be.  If it were

not, a claim for relief brought by a person already extradited would be placed beyond the

---

[12]These circuits have declined to follow *Spencer* on the ground that *Heck* constitutes directly applicable precedent that has not been overruled or qualified by the Supreme Court.  *See Entzi v. Redmann*, 485 F.3d 998, 1003 (8th Cir. 2007); *Gilles v. Davis*, 427 F.3d 197, 209-10 (3d Cir. 2005); *Randell v. Johnson*, 227 F.3d 300, 301 (5th Cir. 2000); *Figueroa v. Rivera*, 147 F.3d 77, 81 n.3 (1st Cir. 1998).

[13]*See Burd v. Sessler*, 702 F.3d 429, 435-36 (7th Cir. 2012); *Cohen v. Longshore¸* 621 F.3d 1311, 1316-17 (10th Cir. 2010) ("If a petitioner is unable to obtain habeas relief—at least where this inability is not due to the petitioner's own lack of diligence—it would be unjust to place his claim for relief beyond the scope of § 1983 where exactly the same claim could be redressed if brought by a former prisoner who had succeeded in cutting his custody short through habeas." (internal citations and quotation marks omitted)); *Wilson v. Johnson*, 535 F.3d 262, 267-68 (4th Cir. 2008); *Powers v. Hamilton Cnty. Pub. Defender Comm'n*, 501 F.3d 592, 602-03 (6th Cir. 2007) (concluding that *Heck* does not constitute directly applicable precedent in a situation where habeas relief is unavailable because the plaintiff in *Heck* had access to habeas relief); *Nonnette v. Small*, 316 F.3d 872, 876-77 (9th Cir. 2002); *Huang v. Johnson*, 251 F.3d 65, 75 (2d Cir. 2001).

scope of § 1983, when exactly the same claim could be redressed if brought by a person to be, but not yet, extradited." *Id.* at 1299 (citing *Spencer*, 523 U.S. at 20-21 (Souter, J., concurring)).

The Eleventh Circuit similarly examined this issue in dicta from *Abusaid v. Hillsborough County Board of County Commissioners*, 405 F.3d 1298, 1316 n.9 (11th Cir. 2005). In *Abusaid*, a night-club owner was charged and convicted of violating an ordinance regulating "rave" or "dance halls," and was sentenced to eighteen months' probation. *Id.* at 1301. The owner subsequently sued the county, the county fire marshal, the county sheriff's office, and the board of county commissioners under § 1983, arguing that the ordinance was unconstitutional. *Id.* at 1302. The district court dismissed the owner's claims as barred by the Eleventh Amendment, and the Eleventh Circuit reversed. *Id.* at 1317. Although the court decided the case on Eleventh Amendment immunity grounds, it sua sponte raised the issue of whether the owner's claims would be barred by the *Heck* doctrine. *Id.* at 1316 n.9. The court stated that if "habeas relief is not available to [the plaintiff], . . . he *may* be entitled to bring a § 1983 suit." *Id.* (emphasis added). Nevertheless, the court concluded that whether *Heck* applied was a fact-intensive inquiry that would be better resolved by the district court upon a proper motion by one of the parties.

On remand, the district court found that, at the time the owner initiated his § 1983 action, he was no longer on probation or "in custody," and, therefore, habeas relief was unavailable to him. *Abusaid v. Hillsborough Cnty. Bd. of Cnty. Comm'rs*, 637 F. Supp. 2d 1002, 1018 (M.D. Fla. 2007). The district court then concluded that to the extent the

owner's claims would necessarily imply the invalidity of his underlying convictions, his claims were barred by the *Heck* doctrine because the doctrine had not been expressly overruled or qualified by the Supreme Court. *Id.* at 1019.  The owner did not appeal.[14]

At first blush, the Eleventh Circuit's discussion of the *Heck* doctrine in *Harden* and *Abusaid* appears to indicate that the court is inclined to follow the *Spencer* plurality. However, in *Vickers v. Donahue*, 137 Fed. App'x 285, 289 (11th Cir. 2005), an unpublished opinion,[15] the Eleventh Circuit stated that "we have not explicitly ruled on whether a plaintiff who has no federal habeas remedy available to him may proceed under § 1983 despite the fact that success on the merits would undermine the validity of [his or her conviction or sentence]."  In *Vickers*, the plaintiff was arrested following allegations that he violated the terms of his community control, and he was subsequently sentenced to nine months' imprisonment. *Id.* at 286.  After serving his sentence, the plaintiff initiated a § 1983 action against several officers, alleging various claims, including a claim for malicious and false arrest. *Id.* at 287.  Although the plaintiff no longer had access to habeas relief, the district court dismissed his claim for malicious and false arrest as barred by *Heck*, and the Eleventh Circuit affirmed. *Id.* at 290.  The Eleventh Circuit concluded that it need not consider whether the unavailability of habeas relief prevented application of the *Heck* bar because (1) the plaintiff could have appealed the revocation order, and, thus, he was

---

[14]This Court notes that a ruling in favor of the owner on remand under *Heck* would have essentially allowed the owner to purposefully circumvent the *Heck* bar by waiting to pursue his civil claims until his eighteen-month probationary period expired.

[15]Under the Rules of the Eleventh Circuit, "unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority."  11th Cir. R. 36-2.

not without a remedy to seek post-conviction relief, and (2) the plaintiff's § 1983 claim would imply the invalidity of the order of revocation. *Id.* at 289-90. Thus, the Eleventh Circuit held that the *Heck* bar applied to the plaintiff's § 1983 claim for malicious and false arrest "despite the unavailability of habeas relief." *Id.* at 290.

Next, in *McClish v. Nugent*, 483 F.3d 1231, the Eleventh Circuit examined the applicability of the *Heck* doctrine to a § 1983 plaintiff who was charged with a crime, but the charge was later dismissed for successful completion of a pretrial intervention program ("PTI"). The district court concluded that the plaintiff's claim was *Heck* barred because dismissal of his charge for participation in PTI was not a favorable termination. *Id.* at 1251. The Eleventh Circuit reversed, holding that *Heck* did not apply because the plaintiff was never convicted of a crime; thus, there was no need to satisfy the favorable-termination requirement. *Id.* The court further stated that even if *Heck* applied, the plaintiff "correctly cites to *Abusaid* . . . for the proposition that the Supreme Court has apparently receded from the idea that *Heck*'s favorable-termination requirement also applies to non-incarcerated individuals." *Id.* at 1251 n.19.

In another unpublished opinion, *Christy v. Sheriff of Palm Beach County*, 288 Fed. App'x 658 (11th Cir. 2008), the Eleventh Circuit upheld the district court's dismissal of a plaintiff's claims under § 1983 as barred by *Heck*. First, the court stated that if the plaintiff prevailed on the claims, it would necessarily imply the invalidity of his conviction. *Id.* at 666. The plaintiff argued that *Heck* did not apply to his claims because habeas relief was unavailable to him, but the court rejected that argument stating that, "we have expressly

17

declined to consider that issue in an opinion where the § 1983 action is otherwise barred under *Heck*."[16]  *Id.*

The Eleventh Circuit opinions that have considered this issue and found that the plaintiff's claims were not barred by *Heck* have not addressed a situation analogous to the instant case where the plaintiff is both no longer in custody (i.e., habeas relief is unavailable) *and* the plaintiff's § 1983 claims would impugn his or her conviction or sentence.  Rather, in each case where the Eleventh Circuit found that a plaintiff's claims were not barred by *Heck* and the plaintiff did not have access to habeas relief, the plaintiff's claims did not necessarily imply the invalidity of his or her conviction or sentence.  *See Morrow*, 610 F.3d 1271; *Harden*, 320 F.3d 1289.  In contrast, in each case where the Eleventh Circuit found that the unavailability of habeas relief would not preclude application of the *Heck* bar, the plaintiff's claims necessarily implied the invalidity of a conviction.[17]  *See Vickers*, 137 Fed. App'x 285; *Christy*, 288 Fed. App'x 658.

---

[16]In *Johnson v. Greaves*, 366 Fed. App'x 976, 978 (11th Cir. 2010), the Eleventh Circuit upheld application of the *Heck* bar, rejecting plaintiff's contention "that the [district] court was required to consider the availability of habeas relief before determining that his case was barred by *Heck*."  However, in *Morrow v. Federal Bureau of Prisons*, 610 F.3d 1271, 1272 (11th Cir. 2010), the Eleventh Circuit stated "we do not understand *Heck's* rule to extend to a case like this one: where Plaintiff is not in custody *and* where Plaintiff's action—even if decided in his favor—in no way implies the invalidity of his conviction or the sentence imposed by his conviction." (Emphasis added.).

[17]The district courts that have grappled with the unwieldy precedent in this area have reached the same conclusion.  *See Baer v. Sapp*, No. 5:11cv248/MP/CJK, 2011 WL 9154681, at *6 (N.D. Fla. Dec. 29, 2011) (report and recommendation), *adopted by Baer v. Abel*, No. 5:11-cv-00248-MP-CJK, 2012 WL 4466349 (N.D. Fla. Sept. 26, 2012); *Thro v. Bagwell*, No. 5:08cv120/RS/EMT, 2011 WL 3925040, at *6 (N.D. Fla. Aug. 9, 2011) (report and recommendation), *adopted by* 2011 WL 3925031 (N.D. Fla. Sept. 7, 2011); *Gray v. Kinsey*, No. 3:09cv324/LAC/MD, 2009 WL 2634205, at *8-9 (N.D. Fla. Aug. 25, 2009) (report and recommendation), *adopted by* 2009 WL 3157687 (N.D. Fla. Sept. 28, 2009); *Domotor v. Wennet*, 630 F. Supp. 2d 1368, 1380 (S.D. Fla. 2009), *affirmed*, 356 Fed. App'x 316 (11th Cir. 2009);

Thus, as to Plaintiff's claims for false arrest, the Court concludes that the unavailability of federal habeas review does not preclude application of the *Heck* doctrine. First, as discussed above, Plaintiff's claims for false arrest would necessarily imply the invalidity of the order of adjudication issued by the state court. *See Vickers*, 137 Fed. App'x at 289-90; *Christy*, 288 Fed. App'x at 665-66. And, second, federal habeas relief was not the only means by which M.E. could challenge her juvenile adjudication and disposition and thus receive a favorable termination. *See Domotor*, 630 F. Supp. 2d at 1380. M.E. could have appealed the order of adjudication or sought habeas relief through state avenues. *See* § 985.534, Fla. Stat. (allowing a juvenile to appeal a final order of the court under the Juvenile Justice Act, §§ 985.01-807, Fla. Stat.); *see also T.P.H. v. State*, 739 So. 2d 1180, 1181 (Fla. 4th DCA 1999) (stating that a juvenile has a "constitutional right to appeal his [or her] adjudication of delinquency, disposition, and order of restitution"); *J.E.P. v. State*, 130 So. 3d 764, 765 (Fla. 2d DCA 2014) (stating that a petition for habeas corpus is the appropriate avenue for seeking postdisposition relief in juvenile cases).

## 5.  Application of *Heck* to Plaintiff's Claims

Because Plaintiff's juvenile adjudication is equivalent to a conviction for *Heck* purposes, to the extent Plaintiff seeks damages under § 1983 for false arrest in Counts II and III, such claims are barred by *Heck*. Nevertheless, Plaintiff also raises claims for

---

*Abusaid*, 637 F. Supp. 2d at 1017-19; *Bilal v. City of Pensacola*, No. 3:05CV366 LAC/MD, 2006 WL 173692, at *6 (N.D. Fla. Jan. 24, 2006) (adopting report and recommendation).

excessive force in Counts II and III, which the Officers do not contend are *Heck* barred. Accordingly, Counts II and III may proceed on this theory.

As to the Officers' contention that Plaintiff's state law claims for false arrest and false imprisonment are barred by *Heck* (Doc. 26 at 4, 9), the Court declines to consider whether state law claims are within the scope of the *Heck* doctrine because, as discussed in more detail below, Plaintiff's state law claims for false arrest and false imprisonment are due to be dismissed on other grounds.

## II.  Whether Plaintiff's state law claims for false arrest and false imprisonment are barred by the existence of probable cause.

The Officers argue that Plaintiff's state law claims for false arrest and false imprisonment (Counts IV and V) should be dismissed because M.E.'s adjudication of delinquency establishes probable cause for her arrest such that her state law claims for false arrest are barred.  (Doc. 26 at 3, 9).  Under Florida law, the existence of probable cause is an absolute bar to a claim of false arrest.  *See Bolanos v. Metro. Dade Cnty.*, 677 So. 2d 1005, 1005 (Fla. 3d DCA 1996); *see also Von Stein v. Brescher*, 904 F.2d 572, 584 n.19 (11th Cir. 1990).  And "in the absence of fraud, prejudice, or any other corrupt means, a conviction is [a] sufficient determination of the element of probable cause," such that a claim for false arrest will be foreclosed.  *Carter v. City of St. Petersburg*, 319 So. 2d 602, 604 (Fla. 2d DCA 1975); *see also Behm v. Campbell*, 925 So. 2d 1070, 1072 (Fla. 5th DCA 2006); *Moody v. City of Key West*, 805 So. 2d 1018, 1021 (Fla. 3d DCA 2001).  Plaintiff does not allege that the juvenile adjudication was the product of fraud, prejudice, or other

corrupt means.[18]   Because M.E. was found to have violated § 843.02, Fla. Stat., by the juvenile court, under Florida law, probable cause for her arrest is conclusively established. Accordingly, Plaintiff's state law claims for false arrest and false imprisonment cannot succeed and should be dismissed.

### III.   Whether the Officers are entitled to qualified immunity on Plaintiff's § 1983 claims for false arrest.

Next, the Officers contend that M.E.'s claims for false arrest under § 1983 (Counts II and III) should be dismissed because the Officers are entitled to qualified immunity.[19] (Doc. 26 at 9-10).   "The defense of qualified immunity completely protects government officials performing discretionary functions from suit in their individual capacities unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known."   *Cottone v. Jenne*, 326 F.3d 1352, 1357 (11th Cir. 2003) (internal citations and quotation marks omitted).   To be entitled to qualified immunity, the government official must first prove that he or she was acting within his or her realm of discretionary authority.   *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002).   Here, Plaintiff does not dispute, and it is clear from the complaint, that the Officers were engaging in a discretionary function in investigating a claim of criminal mischief and in effectuating an arrest.

---

[18]In fact, Plaintiff merely argues that the state law claims for false arrest and false imprisonment should not be dismissed because the Florida Constitution provides for greater protection against unreasonable searches and seizures.   (Doc. 27 at 6-7).   The Court fails to see how this contention is relevant to the arguments proffered by the Officers.

[19]Again, the Officers do not argue that they are entitled to qualified immunity as to Plaintiff's claims for excessive force.   Accordingly, the discussion is limited to the portions of Counts II and III alleging false arrest.

"Once a defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that the defendant is not entitled to qualified immunity." *Cottone*, 326 F.3d at 1358.  To overcome qualified immunity, Plaintiff must satisfy a two-prong test.  *See Saucier v. Katz*, 533 U.S. 194, 201 (2001).  Plaintiff must show (1) that the Officers violated a constitutional right, and (2) the constitutional right violated was clearly established at the time of the alleged violation.  *Id.*  In other words, "[i]f, assuming the plaintiff's allegations were true, no such right would have been violated, the analysis is complete.  However, if a constitutional violation can be made out on the plaintiff's facts, we then must determine whether, at the time of the arrest, every objectively reasonable officer would have realized the acts violated already clearly established federal law." *Davis v. Williams*, 451 F.3d 759, 762 (11th Cir. 2006).

With regard to a claim of false arrest, "[a] warrantless arrest without probable cause violates the Constitution and provides a basis for a section 1983 claim." *Kingsland v. City of Miami*, 382 F.3d 1220, 1226 (11th Cir. 2004).  However, an action for an impermissible arrest is barred if probable cause existed at the time of arrest.  *Wood v. Kesler*, 323 F.3d 872, 878 (11th Cir. 2003).  An arrest is supported by probable cause when it is objectively reasonable based on the totality of the circumstances.  *Rankin v. Evans*, 133 F.3d 1425, 1435 (11th Cir. 1998).  It is well settled that "'[e]ven law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity.'"  *Wood*, 323 F.3d at 878 (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)).  The Eleventh Circuit frames this inquiry as whether an officer had "arguable probable cause." *Montoute v. Carr*, 114 F.3d 181, 184 (11th Cir. 1997).  Because only arguable

probable cause is needed, "the inquiry is not whether probable cause actually existed, but instead whether an officer reasonably could have believed that probable cause existed, in light of the information the officer possessed." *Id.* at 184.

Plaintiff argues that the Officers lacked reasonable suspicion to first detain M.E. and subsequently lacked probable cause to arrest her.  According to Plaintiff, at the time Officer Livingston stopped M.E., M.E. was not in close proximity to the building where the criminal mischief occurred, and Officer Livingston had already been informed by another officer that M.E. and the group she was with was not involved in the criminal mischief the Officers were investigating.  (Doc. 1 at 3).  Officer Livingston instructed M.E. that she was not free to leave and requested that she provide her name and address.  (*Id.* at 4).  M.E. refused to provide her name and address, at which point she avers that Officer Livingston grabbed her, threw her to the ground, and arrested her for resisting an officer without violence.[20]  (*Id.*).  Based on the facts as alleged by Plaintiff, it was not objectively reasonable for the Officers to detain M.E. or to arrest her, and, therefore, the Officers lacked reasonable suspicion and arguable probable cause.

However, the Officers do not argue that the facts as alleged by Plaintiff give rise to actual, or even arguable probable cause, to arrest M.E.  Rather, similar to the Officers' argument regarding Plaintiff's state law claims for false arrest, the Officers contend that M.E.'s juvenile adjudication constitutes conclusive proof that the Officers had probable

---

[20]As expected, the Officers' account of the situation differed from that of M.E.'s (Doc. 34, Ex. A); however, for the purposes of determining whether the Officers are entitled to qualified immunity at the motion to dismiss stage, the Court accepts M.E.'s account of events, although lacking in detail.

cause to arrest M.E, and, therefore, the Officers are entitled to qualified immunity.  (Doc.

26 at 3).  Persuasive authority exists on each side of this issue.[21]  The Court concludes that

M.E.'s adjudication of delinquency constitutes conclusive proof of probable cause.   In

*Colosimo*, the Court found that a conviction could not support a finding of probable cause

on qualified immunity because the conviction could be based on facts that arose after the

arrest.  *Colosimo*, 2005 WL 1421294, at *4-5.  The reasoning in *Colosimo*, however, is not

applicable to the facts of this case.   M.E. committed the offense in the Officers' presence

and the facts that support her adjudication of delinquency are the same facts that would

support a finding of probable cause for her arrest.   And, as an element of the offense of

resisting an officer without violence, the state court had to find that the Officers were

engaged in a lawful execution of a duty.   Such a finding would necessarily entail a finding

that the Officers had probable cause to arrest M.E.   Thus, M.E.'s juvenile adjudication is

evidence that probable cause existed to arrest M.E., and the Officers are entitled to qualified

immunity on Plaintiff's claims for false arrest under § 1983.   *See Abdullah v. City of*

*Jacksonville*, No. 3:04-cv-667-J-32TEM, 2006 WL 2789137, at *6 (M.D. Fla. Sept. 26,

---

[21]*Compare Epstein v. Toys-R-Us Del., Inc.*, 277 F. Supp. 2d 1266, 1274-75 (S.D. Fla. 2003), *aff'd sub nom.*, 116 Fed. App'x 241 (11th Cir. 2004) (concluding that probable cause for an arrest was conclusively established by the plaintiff's conviction for the purposes of qualified immunity); *with Colosimo v. City of Port Orange*, No. 604CV1491ORL31DAB, 2005 WL 1421294, at *4-5 (M.D. Fla. June 16, 2005) (rejecting defendant's argument that a conviction was conclusive proof of probable cause and finding that probable cause should be determined by facts in the officer's knowledge at the time of arrest and should not be determined on a post hoc basis); *see also Brown v. Willey*, 391 F.3d 968, 969 (8th Cir. 2004) (holding that a state court conviction was conclusive proof of probable cause, and, therefore, the plaintiffs' claim for false arrest was barred).

2006) (finding that a conviction "illustrate[d] as a matter of law that there existed arguable probable cause for the arrest").

Because the Officers are entitled to qualified immunity as to Plaintiff's claims for false arrest under § 1983, Counts II and III are also due to be dismissed on this ground to the extent they allege claims for false arrest.[22]

## IV.  Whether Plaintiff's official capacity claims against the Officers are duplicative of her claims against the City.

The Officers contend that Counts II through V should be dismissed to the extent they seek redress against the Officers in their official capacities because those claims amount to claims against the City and are merely duplicative of claims already alleged in the complaint.  (Doc. 26 at 10).  Plaintiff clarifies in her response to the motion to dismiss that she is only asserting claims against the Officers in their official capacities under Counts IV and V for false arrest and false imprisonment under state law.  (Doc. 27 at 20).  The Court has already determined that Plaintiff's state law claims for false arrest and false imprisonment are due to be dismissed.  Accordingly, whether the state law claims against the Officers in their official capacities are duplicative of claims alleged against the City is now moot.

---

[22]Counts II and III may proceed to the extent they allege claims for excessive force under § 1983.

**V.   Whether Plaintiff fails to state a claim for assault against Officer Livingston.**

Finally, Officer Livingston argues that Plaintiff's claim for assault (Count VII) should be dismissed because it fails to state a claim upon which relief could be granted.[23] (Doc. 26 at 11).   Under Florida law, "[a]n 'assault' is an intentional, unlawful offer of corporal injury to another by force, or exertion of force directed toward another under such circumstances as to create a reasonable fear of imminent peril."   *Sullivan v. Atl. Fed. Sav. & Loan Assoc.*, 454 So. 2d 52, 54 (Fla. 4th DCA 1984).

To prove her claim for assault, Plaintiff "need not plead specific facts for *every* element."   *Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1320 (11th Cir. 2006).   Rather, Plaintiff must provide "either direct or inferential allegations respecting all *material* elements of a cause of action."   *Id.*; *see also Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001) ("[A]t a minimum, notice pleading requires that a complaint contain inferential allegations from which [the court] can identify each of the material elements necessary to sustain a recovery under some viable legal theory.").   Officer Livingston argues that Plaintiff's claim for assault fails because Plaintiff did not specifically allege a well-founded fear of imminent violence.   (Doc. 26 at 11).   Plaintiff counters that the facts as alleged allow for the reasonable inference that M.E. had a well-founded fear of imminent violence.   (Doc. 27 at 19).

Because Plaintiff alleged that Officer Livingston forcibly grabbed M.E. and threw her to the ground, at the motion to dismiss stage, the facts as alleged provide an adequate

---

[23]Count VII alleges claims for both assault and battery, but the Officers only challenge Count VII as to Plaintiff's claim for assault.  (Doc. 26 at 11).

basis to infer that M.E. experienced a well-founded fear of imminent violence.  Thus, Plaintiff has alleged sufficient facts to establish a prima facie claim for assault, and the Officers are not entitled to dismissal of this claim.

As an additional matter, because the Court has concluded that M.E.'s arrest was based upon probable cause, Plaintiff's claim for assault and battery against Officer Livingston may only survive to the extent it constitutes a claim for the use of excessive force.  Under Florida law, "police officers are entitled to a presumption of good faith in regard to the use of force applied during a lawful arrest, and officers are only liable for damage where the force used is 'clearly excessive.'"  *Davis v. Williams,* 451 F.3d 759, 768 (11th Cir.2006) (quoting *City of Miami v. Sanders,* 672 So. 2d 46, 47 (Fla. 3d DCA 1996)).  "If an officer uses excessive force, 'the ordinarily protected use of force is transformed into a battery.'"  *Id.* (quoting *Sanders,* 672 So. 2d at 47 (internal punctuation omitted)).[24]

## CONCLUSION

Accordingly, it is therefore **ORDERED AND ADJUDGED** that:

1.   Defendants Brett Livingston and Ivelisse Severance's *Renewed* Motion to Dismiss Counts II through V and Count VII of Plaintiff's Complaint (Doc. 26) is GRANTED in part and DENIED in part, as follows:

---

[24]Florida law does not recognize a separate claim of "excessive force."  *See McDermott v. Brevard Cnty. Sheriff's Office,* No. 6:07-cv-150-Orl-31KRS, 2007 WL 788377, at *4 (M.D. Fla. Mar. 14, 2007) (finding that the plaintiff stated a cause of action under Florida law for excessive force through the vehicle of a claim for assault and battery).  Rather, a claim for excessive force in Florida is generally plead as a battery or an assault and battery, and is premised upon an officer's use of force above and beyond that needed to effect an arrest.  *See Sanders,* 672 So. 2d at 47. Nevertheless, a claim for assault and battery premised upon the use of excessive force is essentially the state-law counterpart to a § 1983 excessive force claim.

A. The motion is GRANTED to the extent:

    i. Count II is DISMISSED with respect to Plaintiff's allegations of false arrest under § 1983 against Officer Livingston but may proceed on the remaining grounds raised;

    ii. Count III is DISMISSED with respect to Plaintiff's allegations of false arrest under § 1983 against Officer Severance but may proceed on the remaining grounds raised;

    iii. Count IV is DISMISSED in its entirety; and

    iv. Count V is DISMISSED in its entirety.

B. The motion is DENIED to the extent the Officers seek dismissal of the remaining grounds of Counts II and III and Count VII.

DONE AND ORDERED at Tampa, Florida on this 10th day of November, 2014.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record

S:\OCALA\13-528 Henry v. City of Mt. Dora MTD.docx